[No. B175136. Second Dist., Div. Eight. Dec. 3, 2004.]

KAREN WISDEN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOHN SIMS et al., Real Parties in Interest.

## COUNSEL

Andrews & Hensleigh, Joseph Andrews and John Aumer for Petitioner.

No appearance for Respondent.

Katten Muchin Zavis Rosenman, Charles M. Stern and Rania Khamis for Real Parties in Interest American Housing Corporation and John Sims.

Keats, McFarland & Wilson and Emil W. Herich for Real Party in Interest Michael Heaman.

## OPINION

**BOLAND, J.—**

### SUMMARY

Plaintiff Karen Wisden seeks writ relief after the trial court denied her request for a jury trial on a cause of action for fraudulent conveyance. We conclude the trial court erred when it denied Wisden's request. Accordingly, we grant the petition.

### FACTUAL AND PROCEDURAL HISTORY

Karen Wisden filed an action against American Housing Corporation (AHC) and two of its officers, John Sims and Michael Heaman, seeking to enforce an unpaid judgment entered against AHC. The complaint alleged that in a prior action brought by Wisden against AHC, the parties entered into a stipulated judgment for $75,000 in favor of Wisden and against AHC. According to the complaint, no money was paid in satisfaction of the judgment. The complaint further alleged Sims and Heaman testified during judgment debtor examinations that AHC was without assets and was insolvent.

The complaint asserted four causes of action, including a cause of action for fraudulent conveyance. In that cause of action, Wisden sought to set aside, to the extent necessary to satisfy her judgment against AHC, allegedly fraudulent transfers of funds totaling more than $1.5 million from AHC to Sims and Heaman. She also sought to enjoin further disposition or dissipation of the funds obtained through the fraudulent transfers, imposition of a constructive trust on assets obtained through the use of those funds, and punitive damages.

Wisden requested a jury trial. The trial court issued an order to show cause, requesting briefing on Wisden's entitlement to a jury trial on any of the causes of action asserted in her complaint. In support of her contention that she had a right to a jury trial on the fraudulent conveyance claim,[1] Wisden cited *Granfinanciera, S.A. v. Nordberg* (1989) 492 U.S. 33 [106 L.Ed.2d 26, 109 S.Ct. 2782] (*Granfinanciera*), where the Supreme Court held that persons sued by a bankruptcy trustee to recover allegedly fraudulent conveyances of money were entitled to a jury trial. Wisden also cited Code of Civil Procedure section 592 in support of her contention.[2]

In response, AHC and Sims claimed the fraudulent conveyance cause of action "invokes the provisions of California's Uniform Fraudulent Transfer Act ('UFTA')" and, under that act, no right to a jury trial is afforded. AHC and Sims sought to distinguish *Granfinanciera* on the grounds that the case involved the Seventh Amendment to the United States Constitution and a claim by a bankruptcy trustee to recover improper transfers, not a claim by a judgment creditor seeking to set aside a fraudulent transfer. AHC and Sims also claimed Code of Civil Procedure section 592 was inapplicable because Wisden was not seeking to recover "specific, real, or personal property." In a separate response, Heaman also argued Wisden was not entitled to a jury trial on the fraudulent conveyance claim.

Agreeing with the defendants, the trial court ruled Wisden was not entitled to a jury trial. It noted a "long line of federal authority" holding that claims under the UFTA and its predecessor statute are equitable in nature and do not

---

[1] Wisden also claimed she was entitled to a jury trial on an unfair business practices claim. The trial court subsequently summarily adjudicated that claim against Wisden, and the propriety of that ruling is not at issue in this writ proceeding. We therefore focus exclusively on whether Wisden is entitled to a jury trial on her fraudulent conveyance claim.

[2] Code of Civil Procedure section 592 provides: "In actions for the recovery of specific, real, or personal property, with or without damages, or for money claimed as due upon contract, or as damages for breach of contract, or for injuries, an issue of fact must be tried by a jury, unless a jury trial is waived, or a reference is ordered, as provided in this Code. Where in these cases there are issues both of law and fact, the issue of law must be first disposed of. In other cases, issues of fact must be tried by the Court, subject to its power to order any such issue to be tried by a jury, or to be referred to a referee, as provided in this Code."

involve a right to a jury trial. While acknowledging Wisden's assertion that her cause of action was a common law claim, the court held the cause of action was equitable in nature. It did not expressly address Wisden's contention that she had a right to jury trial under Code of Civil Procedure section 592.[3]

Wisden filed a writ petition challenging the trial court's ruling that she had no right to a jury trial. This court issued an alternative writ, received briefing and heard oral argument.

## DISCUSSION

We conclude Wisden is entitled to a trial by jury on her cause of action for fraudulent conveyance. We first describe the legal principles which control our analysis, then apply those principles to this case, and finally address arguments raised by the real parties in interest.

### 1. *The governing legal principles.*

■ The California Supreme Court has described, on numerous occasions, the principles under which we determine whether a right to jury trial exists under the California Constitution (art. I, § 16). The rule is simple. If the right to trial by jury existed at common law in 1850, when the California Constitution was adopted, it exists today: "It is the right to trial by jury as it existed at common law which is preserved; and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact." (*People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 287 [231 P.2d 832] [right to trial by jury in forfeiture proceeding].)[4]

■ The Court has expressly cautioned that the right to a trial by jury "cannot be avoided by merely calling an action a special proceeding or

---

[3] Because we conclude Wisden is entitled to a jury trial under the California Constitution, we likewise do not address this claim.

[4] "At common law, prior to the adoption of the Constitution, a party against whom the forfeiture of property used in violation of law (then a carriage, wagon, horse or mule, now usually an automobile), was sought to be enforced was entitled to a trial by jury. Consequently such right exists now." (*People v. One 1941 Chevrolet Coupe, supra,* 37 Cal.2d at p. 300, fn. omitted.) The same principles are recited in *Crouchman v. Superior Court* (1988) 45 Cal.3d 1167, 1173–1174 [248 Cal.Rptr. 626, 755 P.2d 1075] (no right to a jury trial on an appeal from small claims court), and *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8–9 [151 Cal.Rptr. 323, 587 P.2d 1136] (no right to a jury trial in action where the complaint sought relief historically available only in equity, through application of the doctrine of promissory estoppel).

equitable in nature." (*People v. One 1941 Chevrolet Coupe, supra,* 37 Cal.2d at p. 299.) The constitutional right to a jury trial "does not permit the Legislature to confer on the courts the power of trying according to the course of chancery any question which has always been triable according to the course of the common law by a jury." (*Ibid.*) In other words, the Legislature cannot, "by providing new remedies . . . in form equitable," convert a legal right "into an equitable one so as to infringe upon the right of trial by jury." (*Ibid.*, fn. omitted.)

■ Thus, "In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the gist of the action. A jury trial must be granted where the gist of the action is legal, where the action is in reality cognizable at law." (*People v. One 1941 Chevrolet Coupe, supra,* 37 Cal.2d at p. 299.)

"On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial." (*C & K Engineering Contractors v. Amber Steel Co., supra,* 23 Cal.3d at p. 9 (*C & K Engineering*), quoting *Hartman v. Burford* (1966) 242 Cal.App.2d 268, 270 [51 Cal.Rptr. 309] [enforcement of a promise to make a will].) While the legal or equitable nature of a cause of action is ordinarily determined by the mode of relief afforded, "the prayer for relief in a particular case is not conclusive . . . ." (*C & K Engineering, supra,* 23 Cal.3d at p. 9.)

### 2. *Wisden's action for fraudulent conveyance.*

Consonant with these well-settled principles, we look first to the historical question whether an action to recover fraudulent conveyances was triable by a jury at common law in 1850. We need not look far, because the United States Supreme Court had occasion to assess this very question in *Granfinanciera, supra,* 492 U.S. 33.

In *Granfinanciera,* the court concluded the respondent in that case, a trustee in bankruptcy, "would have had to bring his action to recover an alleged fraudulent conveyance of a determinate sum of money at law in 18th-century England, and . . . a court of equity would not have adjudicated it." (*Granfinanciera, supra,* 492 U.S. at pp. 46–47, fn. omitted.) The court's recitation of the historical facts is supported with extensive citations to the historical record and legal authorities. (*Id.* at pp. 43–47.) The court observes, for example, that: " 'In England, long prior to the enactment of our first Judiciary Act, common law actions of trover and money had and received were resorted to for the recovery of preferential payments by bankrupts.' " (*Id.* at p. 43, quoting *Schoenthal v. Irving Trust Co.* (1932) 287 U.S. 92, 94

[77 L.Ed. 185, 53 S.Ct. 50], fn. omitted, and citing numerous English cases.) While the court acknowledged that "courts of equity sometimes provided relief in fraudulent conveyance actions" (*Granfinanciera, supra,* 492 U.S. at p. 43), it concluded that fraudulent transfers of money were not "typically or indeed ever entertained by English courts of equity when the Seventh Amendment was adopted" in 1791. (*Id.* at p. 44 [citing scholarly authority to the effect that if the fraudulent transfer were of cash, the action would be for money had and received, whereas the equitable process could be invoked if the subject matter were land or an intangible].) *Granfinanciera* concluded that the fraudulent conveyance action in that case—which sought monetary relief and disclosed no facts calling for an accounting or other equitable relief—"plainly seeks relief traditionally provided by law courts or on the law side of courts having both legal and equitable dockets."[5] (*Id.* at p. 49, fn. omitted.)

■ Based upon the historical analysis in *Granfinanciera,* it appears beyond debate that, in 1791, the right to trial by jury existed at common law in an action to recover an alleged fraudulent conveyance of a determinate sum of money. Moreover, none of the real parties in interest has adduced any authority suggesting that any change occurred in the common law between 1791 (the relevant date for *Granfinanciera*'s Seventh Amendment analysis) and 1850 (the relevant date for analysis under the California Constitution).[6] We must necessarily conclude, consonant with California Supreme Court

---

[5] In *Granfinanciera,* the Supreme Court, deciding a claim to a jury trial based on the Seventh Amendment, employed a two-part analysis, first " 'compar[ing] the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity,' " and then " 'examin[ing] the remedy sought and determin[ing] whether it is legal or equitable in nature.' " (*Granfinanciera, supra,* 492 U.S. at p. 42, quoting *Tull v. United States* (1987) 481 U.S. 412, 417–418 [95 L.Ed.2d 365, 107 S.Ct. 1831].) After applying those two factors to determine that a Seventh Amendment right to jury trial existed, the court then determined whether Congress "may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." (*Granfinanciera, supra,* 492 U.S. at p. 42, fn. omitted.) The court concluded that, while Congress "may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment" under certain conditions, "it lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury." (*Id.* at pp. 51–52.)

[6] Real party in interest Heaman contends that the distinction between 1791 and 1850 is "not meaningless," but he adduces no evidence to show that the right to jury trial did not exist in a fraudulent conveyance action at any time after 1791 and before 1850. He asserts that, subsequent to 1791, California and other courts concluded that a cause of action for fraudulent conveyance was "essentially equitable" and therefore a jury should not be allowed, citing *Wagner v. Trout* (1954) 124 Cal.App.2d 248, 254 [268 P.2d 537], and *Banning v. Armstrong* (1862) 7 Minn. 40 [7 Gilf. 24]. Neither case is helpful.

*Wagner v. Trout,* a case decided in 1954, is not probative of the state of the common law in 1850, as it contains no discussion of the common law at that time. Indeed, *Wagner v. Trout,* an action to quiet title to an automobile, nowhere refers to the right to a jury trial. The court stated that a fraudulent transfer was void as to creditors, but that the invalidity did not vest title in the creditor. The court merely observed that the defrauded creditor had various remedies to collect her debt, including an equitable action to have the transfer declared void and the property

authority, that the same right to trial by jury in an action to recover a fraudulent conveyance of a determinate sum of money exists today.

### 3. *Contentions of the real parties in interest.*

Real parties in interest fail to acknowledge the settled principles under which the existence *vel non* of a right to jury trial under the California Constitution is to be determined—that is, the right is "a purely historical question, a fact which is to be ascertained like any other social, political or legal fact." (*People v. One 1941 Chevrolet Coupe, supra*, 37 Cal.2d at p. 287; accord, *Crouchman v. Superior Court, supra*, 45 Cal.3d at p. 1173; *C & K Engineering, supra*, 23 Cal.3d at p. 8.) The absence of the necessary historical analysis is telling. Instead, AHC and Sims make several different assertions, all of which lack merit.

■ First, AHC and Sims assert that analysis of a plaintiff's right to a jury trial "must begin with a review of the pleadings," which in this case do not use the word "damages," and that no right to jury trial exists when the remedies invoked in the pleadings "are equitable in nature . . . ." We cannot agree, either with real parties' interpretation of Wisden's complaint or with the proposition that analysis begins with a review of the complaint. Analysis begins, as the California Supreme Court has instructed, with the historical analysis, not with the pleadings; "the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case . . . ." (*People v. One 1941 Chevrolet Coupe, supra*, 37 Cal.2d at p. 299.) In addition, "the prayer for relief in a particular case is not conclusive . . . ." (*C & K Engineering, supra*, 23 Cal.3d at p. 9.) In any event, Wisden's complaint seeks monetary relief. It explicitly requests "avoidance of

---

subjected to her claims, and that a creditor could not, without legal process, appropriate property fraudulently conveyed by the debtor to the payment of his debts. (*Wagner v. Trout, supra*, 124 Cal.App.2d at pp. 253–254.)

The Minnesota Supreme Court's discussion in *Banning v. Armstrong*, while it discusses earlier cases, likewise does not address the question whether an action to recover a fraudulent conveyance of a determinate sum of money was a legal or an equitable action. *Banning* did not involve a claim of right to a jury trial, and did not involve a fraudulent conveyance of money. The plaintiff in *Banning* expressly sought relief in equity to set aside an allegedly fraudulent assignment of the defendant's property, and thereby to remove a cloud upon certain real estate upon which plaintiff had levied to satisfy a judgment he held against the assignor. (*Banning v. Armstrong, supra*, 7 Minn. at p. 42.) Indeed, one of the defendant's claims in *Banning*—which the court rejected—was that the plaintiff was not entitled to equitable relief until he first exhausted his legal remedy under his execution against the property. (*Id.* at p. 43.) The court cites cases holding, for example, that if a creditor seeks the aid of a chancery court against the real estate of his debtor, he must show a judgment at law creating a lien on that real estate. (*Id.* at p. 44.) The fact that relief was available in equity, "for the purpose of removing some obstruction, fraudulently or inequitably interposed, to prevent a sale on execution" of property (*id.* at p. 45), does not demonstrate, or even suggest, that suits to recover an allegedly fraudulent transfer of money were available in equity in 1850.

the fraudulent transfers to the extent necessary to satisfy [her] existing judgment against" AHC, as well as punitive damages. The "mode of relief to be afforded" is necessarily monetary relief, and it does not depend upon the application of equitable doctrines. (See *C & K Engineering, supra*, 23 Cal.3d at p. 9 [legal or equitable nature of a cause of action is ordinarily determined by the mode of relief to be afforded]; see also *Granfinanciera, supra*, 492 U.S. at p. 49, fn. 7 ["any distinction that might exist between 'damages' and monetary relief under a different label is purely semantic, with no relevance to the adjudication of petitioners' Seventh Amendment claim"].) In short, even assuming we could ignore the historical record showing the right to jury trial in a fraudulent conveyance action existed at English common law, we discern no basis for the assertion that Wisden's fraudulent conveyance action sought exclusively, or even "essentially," equitable remedies.

■ Second, AHC and Sims contend that the UFTA, which has no provision for jury trial, supersedes the common law of fraudulent transfers in California. They are mistaken. "[T]he remedies of the UFTA and its predecessor . . . are cumulative to the remedies applicable to fraudulent conveyances that existed before the uniform laws went into effect." (*Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 929 [60 Cal.Rptr.2d 841]; see also *Macedo v. Bosio* (2001) 86 Cal.App.4th 1044, 1051 [104 Cal.Rptr.2d 1] ["the UFTA is not the exclusive remedy by which fraudulent conveyances and transfers may be attacked"; they "may also be attacked by, as it were, a common law action"].) Moreover, even if the Legislature intended that all fraudulent conveyance claims be brought under the UFTA, the Legislature could not thereby dispense with a right to jury trial that existed at common law when the California Constitution was adopted. (*People v. One 1941 Chevrolet Coupe, supra*, 37 Cal.2d at p. 299, fn. omitted ["[t]he Legislature cannot convert a legal right into an equitable one so as to infringe upon the right of trial by jury"].)

Third, AHC and Sims argue that any claim asserting a fraudulent transfer, whether based on the statute or common law, is "equitable in nature" and therefore no right to jury trial exists. Again, real parties avoid reference to the historical record, which is plainly to the contrary. (*Granfinanciera, supra*, 492 U.S. at pp. 43–47.) They also ignore the express stricture of the California Supreme Court, which advises that the right to trial by jury cannot be avoided "by merely calling an action . . . equitable in nature." (*People v. One 1941 Chevrolet Coupe, supra*, 37 Cal.2d at p. 299.)[7]

---

[7] AHC and Sims cite several cases involving fraudulent conveyances in which courts concluded that no right to jury trial existed. These cases are not persuasive. Only one is a California case, and it does not assist the real parties. In *Whitehouse v. Six Corporation* (1995) 40 Cal.App.4th 527 [48 Cal.Rptr.2d 600], appellants filed a third party claim of ownership of several properties that were the subject of a judgment directing a foreclosure sale in an

Fourth, AHC and Sims argue *Granfinanciera* is irrelevant, because the Seventh Amendment applies only in federal courts and the right to jury trial at issue in this case is a matter of state law. While the latter proposition is correct, the former is not. The relevance of *Granfinanciera* lies not in its holding under the Seventh Amendment, but in its recitation of the historical facts establishing that an action to recover fraudulent conveyances of a determinate sum of money was triable by a jury at common law in late 18th-century England.

Finally, AHC and Sims assert that *Granfinanciera* is distinguishable because it involved fraudulent transfer claims by a bankruptcy trustee, rather than by a judgment creditor. According to real parties, the "remedies sought by a judgment creditor attempting to collect on an unsatisfied money judgment have traditionally been deemed available by an equitable action, or, more precisely, a bill in equity." This assertion is, once again, inapt.[8]

underlying action, alleging they had lawfully acquired title to the parcels. Their claim of ownership was challenged on the ground the transfers were fraudulent. The court addressed appellants' contention that having to defend a fraudulent transfer action gave them the right to discovery and a jury trial. The court concluded appellants had no right to discovery and jury trial, because those rights were specifically excluded in a third party claim proceeding, which appellants had chosen in preference to other available equitable and legal remedies. Indeed, the court indicated appellants "would be entitled to these rights [discovery and jury trial] in an action at law . . . ." (*Id.* at p. 535.) The other cases cited are federal district court cases, and are likewise unavailing. *Towers v. Titus* (N.D.Cal. 1979) 5 B.R. 786, in which the trustee in bankruptcy sought to recover numerous parcels of real estate and other assets allegedly transferred in fraud of the bankrupt's creditors, involved a Seventh Amendment claim and predated the Supreme Court's 1989 decision in *Granfinanciera, supra,* 492 U.S. 33. (Also, in concluding the fraudulent conveyance action in *Towers v. Titus* was "equitable in nature," the court observed that "[a]ctions for fraudulent conveyance, . . . *seeking something more than a money judgment,* have traditionally been deemed equitable." (*Towers v. Titus, supra,* 5 B.R. at p. 791, italics added.)) The other federal case cited involved a claim of conspiracy to commit fraudulent transfers in violation of the UFTA, and did not involve the right to jury trial. (*Forum Ins. Co. v. Devere Ltd.* (C.D.Cal. 2001) 151 F.Supp.2d 1145.) The court concluded that the UFTA allows only equitable remedies and provides those remedies solely against transferees, and the defendant was not a transferee. (*Id.* at p. 1150.)

[8] AHC and Sims cite *Seymour v. McAvoy* (1898) 121 Cal. 438, 441 [53 P. 946], and *Frankel v. Boyd* (1895) 106 Cal. 608, 611 [39 P. 939], for the proposition that a judgment creditor's remedies were available by a bill in equity. These cases confirm the nature of a creditor's bill, and *Frankel v. Boyd* describes "a few of many instances in which creditors' bills, or bills in the nature of creditors' bills, will lie." (*Frankel v. Boyd, supra,* 106 Cal. at p. 611.) The Supreme Court made the general observation that in such cases, "in so far as [the debtor] has, without the sanction of positive law, placed his assets beyond the reach of his creditors by a fraudulent transfer thereof, or by a transfer without consideration, under circumstances calculated to defeat the just claims of creditors, which constitutes constructive fraud, the court will intervene and hold the right of the creditor an equitable lien upon property thus transferred, as well as upon property which cannot be reached by the ordinary process at law." (*Id.* at pp. 611–612.) *Frankel,* however, did not involve the fraudulent conveyance of a sum of money, or even a fraudulent conveyance of real property. It involved real property awarded to a wife under a divorce decree. The court held that a general creditor of the

Certainly a judgment creditor may bring a creditor's bill in equity. Indeed, Wisden did so in her second cause of action, and she is not entitled to (and does not seek) a jury trial on that cause. The question is whether she is entitled to a jury trial on her fraudulent conveyance claim. The suggestion that *Granfinanciera*'s historical analysis of common law actions to recover fraudulent conveyances does not apply to judgment creditors, but only to bankruptcy trustees, is demonstrably without merit. The English cases described in *Granfinanciera* involve suits by creditors as well as by assignees in bankruptcy.[9] (*Granfinanciera, supra,* 492 U.S. at pp. 44–45.) Indeed, prior to the passage of the UFTA and its predecessor statute, it was necessary for a creditor to obtain a judgment, or a specific lien on property, before an action could be brought to set aside a fraudulent conveyance. (*Cortez v. Vogt, supra,* 52 Cal.App.4th at p. 930 & fn. 12.) Accordingly, the notion that *Granfinanciera*'s analysis of fraudulent conveyance actions did not include or apply to actions by judgment creditors is necessarily and patently wrong.

In sum, it is beyond question that an action to recover a fraudulent conveyance of a determinate sum of money was triable by a jury at common law in England in 1791. No evidence has been adduced that any change in English common law occurred between 1791 and 1850. Consequently, the California Constitution guarantees the right to jury trial in a similar action today.

## DISPOSITION

The petition for writ of mandate is granted. The respondent court is directed to vacate its order of August 29, 2003, which concluded that petitioner was not entitled to a jury trial on her fraudulent conveyance claim.

---

husband, who credited the husband on the faith of his ownership of community property during the marriage, was entitled to a decree establishing the liability of the property for the satisfaction of the debt after the property was awarded to the wife by the divorce decree, where the husband had no other property. (*Id.* at pp. 610–611, 614–615.) *Frankel* does not stand for the proposition that an action to recover a fraudulent conveyance of a sum of money could or should be brought in a court of equity. Nor does *Seymour v. McAvoy*, which nowhere mentions fraudulent conveyances, and which held that judgment creditors of the beneficiaries of a trust could not subject the trust's assets, which were passed by will to the trust for the support of the beneficiaries, to the satisfaction of their judgment. (*Seymour v. McAvoy, supra,* 121 Cal. at pp. 441–442.)

[9] In any event, other courts have cited and followed *Granfinanciera* outside the bankruptcy context. (See *Miller v. Doniger* (2002) 293 A.D.2d 282 [742 N.Y.S.2d 191, 193] [trial court properly denied a motion in limine to strike a jury trial demand because, among other things, "fraudulent conveyance claims which seek monetary damages only are legal in nature"]; *Hansard Construction Corp. v. Rite Aid of Florida, Inc.* (Fla.Dist.Ct.App. 2001) 783 So.2d 307, 309 [trial court properly granted a jury trial on a claim for fraudulent conveyance brought under Florida's version of the UFTA].)

Petitioner is entitled to her costs in this writ proceeding. (Cal. Rules of Court, rule 56.4.)

Cooper, P. J., and Rubin, J., concurred.